UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

Sorna Corporation,

                Plaintiff,

v.                                     Civil Case No. 13-CV-02794 (ADM/BRT)

Perceptive Software, LLC.

                Defendant.
_____

**PLAINTIFF SORNA CORPORATION'S
OPENING CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES………………………………………………...iv

I.       INTRODUCTION.................................................................... …1

II.      ARGUMENT ..........................................................................2

A.      Claim Construction....................................................................2

B.      Indefiniteness Under § 112, ¶ 2....................................................4

C.      Perceptive' s Arguments Under § 112 Have not been properly raised  and should not be considered by the Court………………………….…………6

D.      The Court Should Adopt Sorna's Proposed Approach for Construing the 17 terms at issue…………………………………………………….......................8

1.      The Medical Data………………………………………………………..8

2.      Files……………………………………………………………..…11

3.      Record-ing other files s defined by DICOM………...…………………12

4.      Plurality of patient files……………………………………………...14

5.      Associating/Associated…………………………………………………15

6.      Parsed/parsing………………………………………………………16

7.      Extract/extracting/extracted…………………………………………18

8.      Time out period…………………………………………………………19

9.      Backup is enabled/ (part of) backing up/backup…………………………21

10.     Print information…………………………………………………………22

11.     Automatic scan/automatically scanning………………………………...24

12.     First recorder-second recorder-third recorder……………………………25

13.     First storage-second storage-third storage………………………………27

14.    The information on said recording media…………………………………28

15.    Information related………………………………………………………..30

16.    Another memory location…………………………………………………32

17.    Another storage location…………………………………………………..33

III.    CONCLUSION……………………………………………………………34

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*,
   359 F.3d 1367 (Fed. Cir. 2004)……………………..………………………4, 6

*Bose Corp. v. JBL, Inc.*,
   274 F.3d 1354 (Fed. Cir. 2001)……………………………………..………6, 9

*Brown v. 3M*,
   265 F.3d 1349 (Fed. Cir. 2001)……………..…………………………………2

*Energizer Holdings, Inc. v. Int'l Trade Comm'n*,
   435 F.3d 1366 (Fed. Cir. 2006)……………………………...…………5, 6

*Ex parte Porter*, 25 USPQ2d 1144,
   (Bd. Pat. App. & Inter. 1992)……………………………………..…....9

*Fisher-Price, Inc. v. Graco Children's Prods.*,
   U.S. App. LEXIS 23960 (Fed. Cir. 2005)………………………………....5

*Hill-Rom Servs., Inc. v. Stryker Corp.*,
   755 F.3d 1367 (Fed. Cir. 2014)………………………………...…………3, 4

*Honeywell Int'l Inc. v. ICM Controls Corp.*,
   Case No. 11-569, 2014 WL 4248434,
   (D. Minn. Aug. 27, 2014)……………………………………………………5

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111(Fed. Cir. 2004)………………………………………...4, 20

*Interval Licensing LLC v. AOL, Inc.*,
   766 F.3d 1364 (Fed. Cir. 2014)………………………………………………5

*Johnson Worldwide Assocs., Inc. v. Zebco Corp.*,
   175 F.3d 985 (Fed. Cir. 1999)………………………………………………..3

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004)……………………………………..…………4

*Markman v. Westview Instruments, Inc.*,
   517 U.S. 370, 371 (1996)……………………………………...…………...2

*Microsoft Corp. v. i4i Ltd. P'ship*,
    131 S. Ct. 2238 (2011)……………………………………………………………4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    134 S. Ct. 2120 (2014)……………………………………………………………..5

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)……………………………...………....3, 20, 22

*Rexnord Corp. v. Laitram Corp.*,
    274 F.3d 1336 (Fed. Cir. 2001)…………………………………….………………4

*Teashot.LLC v. Green Mountain Coffee Roasters, Inc.*,
    No. 2014-1323, (Fed. Cir. 2015)……………………………...…..…………7, 8

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
    299 F.3d 1313 (Fed. Cir. 2002)…………………………………….……………...3

*Teva Pharm. USA, Inc. v. Sandoz, Inc.*,
    135 S. Ct. 831 (2015)……………………………………………..……………19

*U.S. Surgical Corp. v. Ethicon, Inc.*,
    103 F.3d 1554 (Fed. Cir. 1997)…………………………………...…………….2

*Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co*
    308 F.3d 1167 (Fed. Cir. 2002)…………………………………………………4

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996)……………………………………..…..…....…3

## Other Law

35 U.S.C. § 101………………………………………………………………………2

35 U.S.C. § 102……………………………………………………..……………..2

35 U.S.C. § 103……………………………………………...…………………….2

35 U.S.C. § 112…..………………………....2, 4, 5, 6, 7, 8, 9, 15, 25, 27, 28, 29, 30, 31

35 U.S.C. § 282…………………………………………………………………….4, 6

## I.    INTRODUCTION

Plaintiff Sorna Corporation ("Sorna") asserts in the above-captioned litigation that Defendant Perceptive Software, LLC. ("Perceptive") infringes four of Sorna's patents: United States Patent No. 7,965,408 ("the '408 patent" Court Docket No. 26-1), United States Patent No. 8,045,214 ("the '214 patent" Court Docket No. 26-2), United States Patent No. 8,059,304 ("the 304 patent" Court Docket No. 26-3) and United States Patent No. 8,687,226 ("the '226 patent" Court Docket No. 26-4).  Sorna is asserting infringement of all claims in all of the above-mentioned patents, except for claims 3, 12, and 13 of the '408 patent; claims 4, 14, and 15 of the '214 patent; claims 21 and 24 of the '304 patent; and claims 26, 35, and 38 of the '226 patent.  Sorna manufactures, sells, and licenses medical data recording devices worldwide which practice the patents in suit. Perceptive' s MediaWriter product is a medical data recording device that directly competes with Sorna.  Perceptive developed and introduced its infringing MediaWriter product into the market years after the Sorna products were introduced in the market and Sorna's patent application had been published.[1]

Faced with a clear case of infringement based on the meaning of the terms in the patents in suit, Perceptive follows the predictable path of attempting to rewrite the claims or raising § 112 arguments that do not have a proper foundation, were not plead and are

---

[1] Sorna introduced its medical data recording product in January 2000.  The application which matured into the patents in suit published on July 4, 2002. Pacsgear introduced its infringing MediaWriter product in 2007.

in violation of the Court's Pretrial Scheduling Order (Court Docket No. 18).[2] Further

Perceptive' s proposed constructions violate principles of claim construction, and would

change the scope and meaning of the claims in which the claim terms appear.

Perceptive's proposed constructions are inconsistent with, and in fact are precluded by,

the patent's claims and specification.  Claim construction is not an exercise in

substituting different words for clear claim language, particularly when, as with

Perceptive' s proposals, the constructions would actually change the meaning and scope

of the claims. *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir.

1997) (claim construction is appropriate to "clarify and when necessary to explain what

the patentee covered by the claims," but is not an "obligatory exercise in redundancy").

If a jury can otherwise understand a claim term in the context of the overall claim

language, the Court need not rewrite the claim. *See, e.g.*, *Brown v. 3M*, 265 F.3d 1349,

1352 (Fed. Cir. 2001).

Pursuant to the Court's scheduling order (Court Docket No. 18) the parties

submitted their joint claim construction statement on November 21, 2014 (Court Docket

No. 62).  Now comes Sorna's initial claim construction brief.

## II.   ARGUMENT

### A.   Claim Construction

Claim construction is a question of law for the Court. *Markman v. Westview*

*Instruments, Inc.*, 517 U.S. 370, 371, 384-91 (1996). In construing claims, the Court

---

[2] Section (f)(1)(A)(iv) of the Court's Scheduling Order provides that Perceptive's prior art
statement must list all prior art including the statutory sections under 35 U.S.C. §§ 101, 102, 103,
and 112 that it asserts invalidate the patents in suit. In addition motions to amend pleadings were
to be served and the hearing completed by May 2, 2014.

should first look to the intrinsic evidence: the patent claims themselves, the specification, and the prosecution history. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Intrinsic evidence "is the most significant source of the legally operative meaning of disputed claim language." *Id.* at 1582. The specification is usually "dispositive; it is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005). If, after considering all of the intrinsic evidence, "some genuine ambiguity" in the claims remains, the Court may in its sound discretion rely on extrinsic evidence in construing claim terms. *Id.* at 1317, 1319. Extrinsic evidence is all evidence that is not intrinsic evidence, including expert testimony, inventor testimony, dictionaries, and technical treatises and articles. *Vitronics*, 90 F.3d at 1584. Extrinsic evidence "may only be used to help the court come to the proper understanding of the claims; it may not be used to vary or contradict claim language," nor may it be used to "contradict the import of other parts of the specification." *Id.*

There is a "heavy presumption" that claim terms take on their ordinary and customary meanings as understood by a person of ordinary skill in the art at the time of invention. *See Phillips*, 415 F.3d at 1313; *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002); *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999). Only two exceptions exist for giving a claim term a meaning other than its ordinary and customary meaning: (1) where the inventor acts as his or her own lexicographer by setting forth a special definition for a claim term; and (2) where the inventor "disavows the full scope of the claim term either in the specification or during

3

prosecution." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). The standards for these two exceptions are "exacting." *Id.* To overcome that "heavy presumption" in favor of a term's ordinary and customary meaning, the intrinsic evidence must "clearly and deliberately" set forth a different meaning. *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167, 1177 (Fed. Cir. 2002).

A claim term should be construed in a manner consistent with the use of that term in the same claim and other claims in the patent. *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001). It is improper for the Court to "read a limitation from the specification into the claims." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004). "[P]articular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1117 (Fed. Cir. 2004). Also, "even where a patent describes a single embodiment, claims will not be read restrictively unless the patentee has demonstrated a clear intention to limit the claim scope using words or expressions of manifest exclusion or restriction." *Id.* (internal quotation marks omitted).

### B.    Indefiniteness Under § 112, ¶ 2

All patents are presumed valid. 35 U.S.C. § 282(a). The party challenging the validity of a patent or claim bears the burden of establishing invalidity by clear and convincing evidence. *Id.*; *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2245-46 (2011). The ultimate determination as to whether a patent claim is invalid as indefinite is a question of law. *Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004). (citations omitted).

Definiteness is a statutory requirement: "The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor . . . regards as the invention." 35 U.S.C. § 112, ¶ 2. That requirement is satisfied where "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2129 (2014) (concluding the Federal Circuit's "not amenable to construction" and "insolubly ambiguous" standards for indefiniteness did not satisfy the statutory requirement); *see also, e.g.*, *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1370 (Fed. Cir. 2014); *Honeywell Int'l Inc. v. ICM Controls Corp.*, Case No. 11-569, 2014 WL 4248434, at *4 (D. Minn. Aug. 27, 2014). The analysis is rooted in "the understanding of a skilled artisan at the time of the patent application." *Nautilus*, 134 S. Ct. at 2130.

Even if a claim term lacks an antecedent basis, it does not necessarily mean the claim is indefinite and invalid. *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006) ("The *Manual of Patent Examining Procedure* states that '[o]bviously, however, the failure to provide explicit antecedent basis for terms does not always render a claim indefinite.'") (citing MPEP § 2173.05(e) (8th ed. Rev. 2, May 2004)[3]). The claim will only be deemed invalid where the defect is "severe". *Fisher-Price, Inc. v. Graco Children's Prods.*, U.S. App. LEXIS 23960 (Fed. Cir. 2005). An express definition for a claim term is not necessary so long as the term's meaning is

---

[3] As of February 11, 2015, the current online version of the Manual of Patent Examining Procedure states the same and is available at
http://www.uspto.gov/web/offices/pac/mpep/s2173.html.

"fairly inferable" from the patent by a person of ordinary skill in the art. *Bancorp Servs.*, 359 F.3d at 1372-73 (Fed. Cir. 2004); *Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1359 (Fed. Cir. 2001). Indeed, "an antecedent basis can be present by implication." *Energizer*, 435 F.3d at 1371 (citing *Slimfold Mfg. Co. v. Kinkead Indus., Inc.*, 810 F.2d 1113, 1116 (Fed. Cir. 1987); *Cross Med. Prods. v. Medtronic Sofamor Danek*, 424 F.3d 1293, 1319 (Fed. Cir. 2005)). "When the meaning of the claim would reasonably be understood by persons of ordinary skill when read in light of the specification, the claim is not subject to invalidity upon departure from the protocol of 'antecedent basis.'" *Energizer*, 435 F.3d at 1370.

### C.   Perceptive's arguments under § 112 have not been properly raised and should not be considered by the Court

In addition to the foregoing Perceptive's purported arguments under § 112 have not been properly raised and should not be considered by the Court. First, the Court should not consider Perceptive's indefiniteness arguments because Perceptive has not properly plead indefiniteness under § 112, ¶ 2, as an affirmative defense. *See* Fed. R. Civ. P. 12(b); 35 U.S.C. § 282(3)[4].  This is particularly troubling because Perceptive has had in its possession all the information necessary for asserting the affirmative defense of indefiniteness since *before* commencement of the instant litigation. Moreover, the deadline for bringing motions to amend the pleadings has long-since passed, as all such motions "must be filed and the Hearing thereon completed on or before May 2, 2014."

---

[4] Despite submitting two answers in this case Perceptive has plead only a sixth affirmative defense which alleges only lack of written description and lack of enablement under  § 112, ¶ 1 (Court Doc. 11 and Court Doc. 27)

(Scheduling Order, Doc. 18, (j)(2)).

Despite having more than enough time to amend its Answer, Perceptive has not sought leave of Court to add indefiniteness as an affirmative defense. Nor should Perceptive be granted leave of Court to do so. The Scheduling Order strongly suggests that it would entertain motions to amend the add defenses only "where the evidence needed to support these . . . defenses is in whole or in part in the hands of another party." (Scheduling Order, Doc. 18, (c)(1), (2)).   Indefiniteness is not a matter for which discovery is necessary.  As noted above, Perceptive has known about and been in possession of at least the '408 Patent since before Sorna instituted the instant suit. Perceptive thus cannot show good cause because it has not been diligent in pursuing any amendment of its Answer to add indefiniteness as an affirmative defense.

Moreover, Perceptive did not raise indefiniteness until November 21, 2014, more than 13 months after the commencement of the instant suit and nearly 9 months after the Court issued its Scheduling Order.  Perceptive raises indefiniteness in the Joint Patent Case Status Report and Amended Prior Art Statement, but makes only bare assertions, hardly sufficient to put Sorna in a position to respond fully to those allegations. In the Amended Prior Art Statement, Perceptive included a reference to § 112 indefiniteness in its preliminary matters but did not specifically address which asserted claims it argues are indefinite under § 112.  The Court's Pretrial Scheduling Order clearly states that all §112 arguments must be presented in a complete and detailed manner on a claim by claim basis (f)(a)(A).  *Teashot.LLC v. Green Mountain Coffee Roasters, Inc.*, No. 2014-1323, slip op. at 7-8 (Fed. Cir. Jan. 5, 2015) (affirming a district court's conclusion that plaintiff

waived its right to assert the doctrine of equivalents by failing to disclose that doctrine in

its original and supplemental infringement contentions in accordance with the scheduling

order).  In this case Perceptive has served a Prior Art Statement and an amended Prior Art

Statement.  Despite having two bites at the apple Perceptive has not raised arguments

under § 112.

> **D**.    **The Court should adopt Sorna's proposed approach for construing the 17 terms at issue**

> **1.    Disputed Term: "The Medical Data"**

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| the medical data | '408 Patent: **1,14,**15,16,17,18,19<br><br>'214 Patent: **1,**2,3,5,6,7,8,9,10,11, 12,13,**16,**17,18,19,20, 21,22,23,24,25,**26,** 27,28,29,30,**31**<br><br>'304 Patent: **1,**7,**8,**16, **17,19,**20,**22,23,25,**26,27,28, 29,**30**<br><br>'226 Patent: **1,**2,5,13,**18,** 19,20,21,22,23,24,25,27,28, 29,30,31,**32,**33,34,36,37, 39,**40,41,42** | Perceptive's arguments under § 112 have not been properly raised and should not be considered by the Court<br><br>Should the Court decide to consider Perceptive's § 112 argument, that argument should be found to be incorrect<br><br>Should the Court consider construction necessary:<br><br>"Medical data" refers to "medical data information" which is clearly | The term lacks antecedent basis and is therefore indefinite pursuant to 35 U.S.C. §112, ¶2. |

| | | recited in the specification and properly defined in the claims at issue. | |
|---|---|---|---|

First, Perceptive's arguments under § 112 have not been properly raised and should not be considered by the Court. (see Section II(C) above).

Second, even if Perceptive's § 112 argument is considered, it is unpersuasive. A claim is indefinite only when it contains words or phrases whose meaning is unclear. Inherent components of elements recited have antecedent basis in the recitation of the components themselves. *Bose Corp. v. JBL, Inc.,* 274 F.3d 1354, 1359, 61 USPQ2d 1216, 1218-19 (Fed. Cir 2001). *See Ex parte Porter*, 25 USPQ2d 1144, 1145 (Bd. Pat. App. & Inter. 1992) ("controlled stream of fluid" provided reasonable antecedent basis for "the controlled fluid").

The "Medical data" refers to "medical data information". Claim 1 of the '408 patent is exemplary of the use of this term throughout the patents in suit. Claim 1 recites a method of "receiving medical data information in DICOM format", and then references "medical data further comprising one or more files". When examined from the perspective of one of ordinary skill in the art the scope of the term is immediately apparent.

By way of example Figure 1 of the '408 patent clearly illustrates that a medical imaging device generates medical data information, and transmits that information through a communication network **20.**

9



In view of Figure 1 it is clear that "the medical data" includes data created by a medical imaging device and then transmitted through a communications network and received as described in claim 1 408 Col.2 lines 66-70 through Col. 3 lines 1-5.  Medical data information may also include structured reports or key image notes both of which are in DICOM format and received via the communications network.

The information created by the imaging device is described as "medical data information" in claim 1 of the '408 patent then the same medical data information is referred to in the shorthand as "the medical data".  There are no other potential sources of "the medical data" nor any confusion as to that the patents in suit mean by "the medical data".

2.      Disputed Term: "Files"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| files | '408 Patent: **1**,6, **14**,17,19<br><br>'214 Patent: **1**, **16**,22,**26**,28,30,**31**<br><br>'304 Patent: **1**,3, **8**,11,13,**17,19,22,** 25<br><br>'226 Patent: **1**,3, 10,12,**18**,20,28,30, **32**,34,**40,41,42,** | No construction necessary<br><br>Should the Court find construction necessary:<br>"a basic unit of storage that enables differentiation of one set of data from another" Defendant's proposed limitation that a file be stored in one unit is incorrect. | "a file is a collection of data stored in one unit, identified by a file name" |

The term files is ubiquitous in the Sorna patents and is used in several different contexts throughout the patents.  There is no intrinsic evidence to support Perceptive's proposed construction.  In any context the files in question need not be stored in one location.  The term "files" is used to describe the medical data information received from a medical imaging device via the communications network "the medical data further comprising one or more files" '408 patent claim 1 Col. 6, lines 60-61.  The term file is also used in the context of "other files as defined by DICOM" which is another disputed claim term discussed below.

In claim 1 of the 408 patent the medical data information is received and then the patient identification information and study information are parsed from the medical data information which is described as having one or more files.  There is no requirement that

the files in question then be stored in one unit, nor would it be logical for them to be stored in one unit. Rather the received medical data information, which comprises one or more files, could be saved at multiple locations on a storage device.

Perceptive is attempting to read limitations into the term that are not supported by the specification or any other evidence. The medical data information files are never described as being stored in one unit, nor would there be any requirement that they be so stored.

### 3. Disputed Term: "Record-ing other files as defined by DICOM"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| record-ing other files as defined by DICOM | '408 Patent: **1,14** <br><br> '214 Patent: **1,16,26,31** <br><br> '304 Patent: **1,8, 17,19,22,25** <br><br> '226 Patent: **1, 18,32,40,41,42** | "any files defined by DICOM other than the image files, including but not limited to the DICOMDIR file." | "recording at least two files in DICOM format that are not the "one or more files" received and parsed/extracted." |

Perceptive's proposed construction is illogical because there is no recitation of medical data information files other than those which are received from a medical imaging device sent via the communications network. The DICOMDIR file is described as being created in box 76 of figure 4, which shows the processing of print jobs.



Figure 4

The DICOMDir file provides an index and summary information of the DICOM files to be processed or recorded on a disc. '408 patent Col. 5 lines 24-26; '214 patent Col. 5 lines 44-46; '304 patent Col. 5 lines 39-41; '226 patent Col. Lines 46-48. The DICOMDIR greatly shortens the time that it takes for a computer to access the information on a disc or other recording media with DICOM files. Figure 4 explicitly shows the addition of "the other files as defined by DICOM" in the disc production process, and this step is clearly after the medical data information has been received and parsed/extracted and would thus preclude an argument that there are other medical data information files which were received and not parsed/extracted.

13

The "other files" may also include html files or other files which could be included on recording media.

There is no support for Perceptive' s position that the other files are simply additional files which were created by a medical imaging device, then transmitted via a communications network but for some reason not received by the system for parsing or extracting.  There is no recitation of DICOM image files created and not transmitted to the system.

**4.    Disputed Term: "Plurality of patient files"**

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| plurality of patient files | '408 Patent: 19<br><br>'214 Patent: 30<br><br>'304 Patent: 13<br><br>'226 Patent: 12,30 | "two or more files containing medical data information" | "two or more patient files" |

The patents in suit claim that receiving medical data information includes receiving a "plurality of patient files" for different patients at different times.  See '408 patent claim 19.  Thus by definition the plurality of patient files must contain medical data information.  As laid out in figure 4 above "the medical data information" is the data created by a medical imaging device and transmitted through the communications network. There is no recitation of other patient files, all patient files must contain medical data information.

5.      **Disputed Term: "Associating/associated"**

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| associating/associated | '408 Patent: No reference<br><br>'214 Patent: No reference<br><br>'304 Patent: 2,3, 4,6,15,20,23,26, 28,29,**30**<br><br>'226 Patent: 2,3, 6,16,17,19,20, 22,33,34 | "to connect or bring into relation one thing with another" | no proposed construction |

Perceptive claims that the meaning of this term is unclear, though did not raise an objection under §112.  Perceptive appears to request construction of the term in one claim, claim 2 of the '226 patent.  However, Perceptive does not provide a proposed construction.  Sorna contends that throughout the patents in suit the usage of these terms is clear.  The terms means "to connect or bring into relation one thing with another".  The Court can apply this definition to all usages of this term throughout the patents in suit.

Claim 2 of the '226 patent recites "associating a serial numbering device for associating a serial number with the recording media…"  In this context the claim recites a non-transitory machine readable medium providing instructions which cause a machine to perform operations comprising associating (i.e. creating a connection) between a serial numbering device, a given recording medium, and the medical data information on that

recording media.  Then storing the medical data, and recording medium associated

("connected") with that serial number.   Thus "associating" in the claim refers to the

connection made between the serial number, the medical data information, and the

recording medium.

Claim 2 recites storage of the medical data information associated with the

recording medium, and serial number.   The majority of the usages of

"associating/associate" are used in conjunction with serial numbering functionality,

which is similar to the '226 patent claim 2.

However, the term is also used in claim 3 of the '304 patent in the context of

"storing at least one DICOM file associated with the patient on the recording media" and

automatically labeling, the label coming from medical information "associated with the

content of at least one DICOM file stored on the recording media."  Likewise here the

meaning of "associated" is clear, it establishes the connection between one thing and

another.  In the first context of claims 3 the DICOM file in question is associated

("connected to") a patient.   In the second context the information used to create a label is

associated ("connected to") the DICOM file recorded on the recorded media to be

labeled.

### 6.    Disputed Term: "Parsed/parsing"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| parsed/parsing | '408 Patent: **1**,11<br><br>'214 Patent: **1**, 11,13,**16,31** | "to break input into smaller chunks so that a program can act upon the information" | "break into components" |

| | | | |
|---|---|---|---|
| | '304 Patent: **8, 17,19,25**<br><br>'226 Patent: No reference | | |

Sorna contends that the proper construction of this term is "to break into smaller chunks so that a program can act upon the information."   Claim 1 of the '408 patent is instructive to show the function of the parsing language, the term is used throughout several independent claims in similar ways.   In claim 1 of the '408 patent the medical data is received in DICOM format, then patient identification and study information are parsed from the received medical data information.   The parsed patient identification information and study information is scanned, and that scan is used to fill selected fields of the label printed on the media.   By way of example see '408 patent Abstract, and '214 patent Abstract.

Thus it is immediately clear that the parsing process breaks the received medical data information into smaller chunks, and that those chunks are then acted upon by a program to fill the selected fields to create the media label.   Perceptive' s proposed construction of parsing to "break into components" is neither accurate nor does it have support in the intrinsic evidence.   The patient identification information and study information are scanned for information to fill the selected fields to appear on the media label.   Thus a program acts upon the information after the parsing process. By way of example see '408 patent Abstract: Col 4 lines 1-2, Col. 4 lines 38-42.

Perceptive has taken the position in the pending *Inter Partes* Review in the patent office that "extracting" and "parsing" have the same meaning and both mean "retrieving data from a data source". (Declaration of Alexander J. Farrell ("Farrell Decl." ¶ 4, Ex. A).

Sorna also submits extrinsic evidence in support of its definition. The Supreme Court recently held that factual findings based on extrinsic evidence are reviewed on a stricter "clear error" standard. *Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831 (2015). Attached to the Farrell declaration is an excerpt from the Microsoft Computer Dictionary 5th Edition which contains Sorna's exact proposed construction. (Farrell Decl. ¶ 5, Ex. B).

### 7.    Disputed Term: "Extract/extracting/extracted"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| extract/extracting/ extracted | '408 Patent: **14**<br><br>'214 Patent: **26**<br><br>'304 Patent: **1,22**<br><br>'226 Patent: **1, 18,32,40,41,42** | "to draw out" | "to remove" |

Claim 14 of the '408 patent is exemplary to show the function of the extraction language, the phrase is used in the same manner throughout several independent claims. The medical data information is received in DICOM format in this method claim, then the patient identification information and study informant are extracted.  The extracted patient identification information and study information are scanned, and that scan is used to fill selected fields of the label printed on the media.

The extracted patient identification and study information are not "removed" from the received medical data information as argued by Perceptive.  Each of Perceptive' s proposed definitions of "extract" taken from dictionaries contains the word "remove." To remove implies taking the data out of the medical data information, and this is not accurate.  Rather the extracted patient identification and study information are scanned and used to create a label.  The data is preserved, not removed.

Again, Perceptive has taken the position in the pending *Inter Partes* Review in the patent office that "extracting" and "parsing" have the same meaning and both mean "retrieving data from a data source".  (Farrell Decl. ¶ 4).  This is contrary to Perceptive's position in this proceeding.

### 8. Disputed Term: "Time out period"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| time out period | '408 Patent: 7,18<br><br>'214 Patent: 8, 23,29<br><br>'304 Patent: 12 | No construction necessary<br><br>Should the Court find construction necessary: | "a predefined period of time, not less than 10 seconds,  during which a software module checks to determine if |

| | | | something has occurred or not" |
|---|---|---|---|
| | '226 Patent: 11, 29,**40** | "a predefined period of time during which a software module checks to determine if something has occurred or not." | |

Sorna does not believe that construction of this term is necessarily, as a time out period is a well-understood concept in the field of computer science.  In the event that the Court finds that construction is necessary, Sorna believes that the proper construction is "a predefined period of time during which a software module checks to determine if something has occurred or not."  In the patents in issue the invention utilizes a time out period to determine the end of the received medical data information.  Perceptive cites an embodiment in the specification of the '408 patent that sets the value of the timer used in the time out period at no less than 10 seconds.  However, this time limitation is not included in the claims.

It is a "cardinal sin" of claim construction to import limitations from the specification into the claims.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1319-20 (Fed. Cir. 2005) (en banc) (quoting *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1340 (Fed. Cir. 2001)).  "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Id.* at 1312 (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  The 10 second minimum value is described in one embodiment of the time out period, however, the claim itself contains no such

value limitation.   408 patent Col 3. Lines 62-64.  It is not proper for the Court to read

that limitation into the definition of the term time out period.  There is no basis for adding

the 10 second limitation, Perceptive' s attempt to do so is improper.

Rather the Court should rule that no construction of "time out period" is necessary

or settle on the agreed upon part of the definition from both parties "A predefined period

of time, during which a software module checks to determine if something has occurred

or not".

**9.      Disputed Term: "Backup is enabled/(part of) backing up/backup
system/backup"**

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| backup is enabled/(part of) backing up/backup system/backup[5] | '408 Patent: **13**<br><br>'214 Patent: **15,19**<br><br>'304 Patent: **7,16**<br><br>'226 Patent: **5,23** | "backing up" should be construed as "A procedure for creating an additional copy or copies of data." | "a procedure for storing data if enabled for subsequently making backup CDs of such data and deleting such data if not enabled" |

There are several different phrases within claims which include the use of

"backup", in each of its uses backup is properly defined as "a procedure for creating an

additional copy or copies of data."  Perceptive defined this term as "a procedure for

storing data if enabled for subsequently making backup CDs of such data and deleting

such data is not enabled."  There are two main problems with Perceptive' s construction.

---

[5] Perceptive identified "backup system" as a disputed term, but "backup system" does not appear
in any claims-at-issue.

First the claims are not limited to making CD's and second there is no requirements of that data be deleted "if not enabled".

First, there is no claim limitation for the format of the backup.  Claim 9 of the 408 patent states that the recording media may be a CD, DVD or DVDRAM.   Likewise the backup is at times stored "at another memory location." See for instance '226 patent claim 5.  The phrase "Another memory location" is discussed below, but may constitute any memory location and is not limited to CDs or DVDs but rather any location that has memory.

Perceptive cites some language from the specification which describes one embodiment using a CD for a backup, but as noted above the Court may not properly read this limitation into the claims.  *Phillips,* 415 F.3d at 1315.

Secondly there is no requirement that the data be deleted after back-up.  Once again Perceptive cites language from the specification 408 patent col. 6 lines 1-8 that indicates that a patient directory will be deleted if backup is not enabled.  However, this is the only recitation of deleting files during the backup process.  There is no recitation of deleting data if backup is not enabled in the claims and this limitation should not be added by the Court.

### 10.    Disputed Term: "Print information"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| print information | '408 Patent: **1,** 11,**14**<br><br>'214 Patent: **1,** | No construction necessary<br><br>Should the Court find | "information to be printed onto a recording medium to label the medium" |

| | 11,13,**16,26, 31** | construction necessary: | |
| | | | |
| | **'304 Patent: 1,8, 17,19,22,25** | "the information that would allow for visual recognition." | |
| | | | |
| | **'226 Patent: 1, 18,32,40,41,42** | | |

Sorna does not believe that construction of this term is necessary, however if the Court deems construction necessary Sorna believes that the proper construction is "information that could allow for visual recognition".  Print information is derived from the extracted or parsed patient identification and study information which in turn is derived from the received medical data information.

Perceptive argues that "print information" should be construed as "information to be printed onto a recording medium to label the medium" however, this construction is not accurate.  As shown in claim 1 of the '408 patent the information printed on a recording medium are the selected fields of the automatic scan of the stored parsed patient identification and stored parsed study information.

The patents in suit are not limited to printing "print information" rather the function of the print information is to allow a user to see (i.e. visually recognize) what is recorded on the medium.  The print information could be rendered on a screen or in some other fashion than printing it on a medium.

11.     **Disputed Term: "Automatic scan/automatically scanning"**

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| Automatic scan/automatically scanning | '408 Patent: **1,** 11,**14**<br><br>'214 Patent: **1,** 13,**16,26,31**<br><br>'304 Patent: **1,8, 17,19,22,25**<br><br>'226 Patent: **1, 18,32,40** | "the step following parsing where the data is bound with specific meaning or purpose with respect to a data type or object definition." | "look at all parts of (something) carefully in order to detect a feature." |

Automatically scanning is properly construed as "the step following parsing/extracting where the data is bound with specific meaning or purpose with respect to a data type or object definition." Automatic scan or automatically scanning are used in various parts of the patents in suit, however claim 1 of the '408 patent is again instructive of the proper construction. The patient identification information and study information are stored after being parsed or extracted. The patient identification information and study information are then automatically scanned and the print information is rendered based on selected fields. The selected fields represent data types or object definitions which are bound to the corresponding entries in the patient identification information and study information to render print information.

Perceptive' s proposed construction to "look at all parts of (something) carefully in order to detect a feature" is illogical and has no support in the specification. The patient identification information and study information are not "looked at" per se, though it is

true that automatically scanning does detect a feature (data types or object definitions) which are used to create the selected fields of print information.

### 12.   Disputed Term: "First recorder-second recorder-third recorder"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| first recorder-second recorder-third recorder | '408 Patent: No reference<br><br>'214 Patent: **31**<br><br>'304 Patent: **25**<br><br>'226 Patent: No reference | "a structure that records data on a recording media" | "three separate and distinct recorders" |

Perceptive argues that this term must be construed as three separate recording devices, and that the specifications of the patents in suit do not discuss three recorders and thus the claims in question fail under § 112 for being indefinite.

First, Perceptive's arguments under § 112 have not been properly raised and should not be considered by the Court. (see Section II(C) above).

Second Perceptive's proposed construction is without support.  This becomes clear when the function of the recorder in the patents at issue is understood.  The recorders are not separate devices but rather are differentiated by the information recorded.  The proper construction of these recorders are "a structure that records data on a recording media."

The specifications of the patents do not disclose multiple recorders however they do specify the information recorded by the patent terms "first," "second," and "third"

recorders and the flow of information through the system.  Claim 25 of the '304 patent is

instructive to show the claim language in question.  The first recorder records medical

data information from one or more files, the medical data is medical data information

created by a medical imaging device.   The second recorder records other files as defined

by DICOM, these are files which are added to the production process before submitting

the job to the autoloader as discussed above in disputed term number 4 and included in

box 76 in figure 4 below.  The third recorder records the viewing software that resides in

the build image directory box 75 in figure 4 below.



Figure 4

The source of each of the elements recorded by the first, second, and third

recorders is clearly shown.  There need not be separate individual recorders to record

these three elements, a person of ordinary skill would understand the source of each of the files to be recorded and the recorder is clearly defined.  Perceptive does not dispute that a recorder is adequately described, rather Perceptive attempts to create a dispute regarding a differentiation between the recorders.  The differentiation is found in the information recorded by each recorder.

### 13.    Disputed Term: "First storage-second storage-third storage"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| first storage-second storage-third storage | '408 Patent: No reference<br><br>'214 Patent: **31**<br><br>'304 Patent: **25,** 26,27<br><br>'226 Patent: No reference | No construction necessary<br><br>Should the Court find construction necessary:<br><br>"a structure that stores data; different storage locations on media."<br><br>There is no support for a construction that this refers to separate storage devices. | "three separate and distinct storage devices." |

Perceptive argues that this term must be construed to be three separate storage devices, and that the specifications of the patents in suit do not discuss three storage devices and thus the claims in question fail under § 112 for being indefinite.

First, Perceptive's arguments under § 112 have not been properly raised and should not be considered by the Court. (see Section II(C) above).

Second Perceptive's proposed construction is without support. This becomes clear when the function of the storage locations in the patents is understood. The first second, and third storages need not be separate devices but rather are differentiated by the information stored. Sorna does not believe that construction is necessary but in the event the Court deems construction necessary Sorna argues the proper construction is "A structure that stores data; Different storage locations on media".

The claim language in question appears at several locations however, claim 25 of the '304 patent is exemplary of its usage. The first storage stores the parsed patient identification information and parsed study information which are rendered from the received medical data information. The second storage stores image information from the medical data information, and the third storage stores information related to the information recorded. Thus as with disputed term 12 the differentiation between storage locations is not that they are different storage devices, but rather the information they store. This storage by necessity must be in a different physical place on the media, but may be on the same storage device or media.

### 14.    Disputed Term: "The information on said recording media"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| the information on said recording media | '408 Patent: No reference<br><br>'214 Patent: No reference<br><br>'304 Patent: 5,7, 14,16 | Perceptive's arguments under § 112 have not been properly raised and should not be considered by the Court | This term lacks antecedent basis and is therefore indefinite pursuant to 35 U.S.C. §112, ¶2. |

| | ‘226 Patent: No reference | Should the Court decide to consider Perceptive's § 112 argument, that argument should be found to be incorrect<br><br>Should the Court consider construction necessary:<br><br>"any information which has been stored, recorded, or printed on the recording media." | |

Perceptive argues that the reference to "the information" alone in this phrase is indefinite pursuant to § 112.  The term "the information" is used in several contexts and is immediately clear upon reading the claim in question.

First, Perceptive' s arguments under § 112 have not been properly raised and should not be considered by the Court. (see Section II(C) above).

Second even if Perceptive' s proposed argument is considered Sorna does not believe that this term needs construction.  In the event that the Court decides construction is necessary "the information on said recording media" should be construed as "the information which has been stored, recorded or printed on the recording media".

Perceptive argues that the usages of "the information" in claims 5 and 6 of the ‘304 patent appear to be indefinite.  However this is not correct.  Claim 5 refers to storing "the information on said recording media" at another memory location, and is dependent on claim 1.  Claim 1 clearly specifies the information which is printed, recorded or

otherwise stored on the recording media.  Claim 1 specifies that DICOM image information, other files as defined by DICOM, image viewing software, and the selected fields of print information are all on the recording media.  This usage is clearly not indefinite.

Perceptive further argues that the usage of "the information" in claim 6 of the '304 patent is indefinite.  This claim recites associating a unique identifier with "the information at another memory location".  The "information at another memory location" was laid out in claim 5 and is identical to "the information on said recording media".  The terms are not indefinite.

### 15.    Disputed Term: "Information related"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| information related | '408 Patent: No reference<br><br>'214 Patent: No reference<br><br>'304 Patent: 19, 22,25<br><br>'226 Patent: No reference | Perceptive's arguments under § 112 have not been properly raised and should not be considered by the Court<br><br>Should the Court decide to consider Perceptive's § 112 argument, that argument should be found to be incorrect<br><br>Should the Court consider construction necessary:<br><br>"information which | This term is unclear and ambiguous and is therefore indefinite pursuant to 35 U.S.C. §112. |

| | | forms a logical continuum with other information". There is no limitation on the format of the information related. | |
|---|---|---|---|

First, Perceptive's arguments under § 112 have not been properly raised and should not be considered by the Court. (see Section II(C) above).

 Second even if Perceptive's proposed argument is considered Sorna does not believe that this term needs construction.  In any event the usage of this term is immediately clear upon examining the claims in question.  In the event the Court deems construction necessary Sorna believes the proper construction is "information which forms a logical continuum with other information."  The "information related" is a reference to a connection between two pieces of information and varies by claim. Perceptive uses the example of claim 22 of the '304 patent which Sorna will discuss to show the proper construction.

Claim 22 recites to storing information related to DICOM image information. Perceptive argues that it is unclear if this is a reference to "medical data viewing software," "medical data," "print information," "patient identification information," "stored extracted patient identification information," "study information," "stored extracted study information," or "received medical data information" all of which are recited elsewhere in the claim.  However this position is illogical, these other types of information are all separately recited, if the "information related to DICOM image

information" referred to any to these other enumerated types of information the claim would have referenced them by name.  Rather "information related to DICOM image information" refers to information which has a logical relationship with the DICOM image information.   The "related" clause references the relationship between the data, the other enumerated types of data in the claim are clearly not referenced.

### 16.    Disputed Term: "Another memory location"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| another memory location | '408 Patent: No reference<br><br>'214 Patent: No reference<br><br>'304 Patent: 5,6, 7,14,15,16<br><br>'226 Patent: 4,5, 6,14,15,16,17, 21,22,23 | No construction necessary<br><br>Should the Court find construction necessary:<br><br>"another location of memory." Memory is properly defined as "volatile memory that can be written to as well as read."  There is no support for a construction that this refers to a different data recording medium. | "a different data-recording medium" |

Perceptive argues that this term should be construed as "a different data-recording medium".  Sorna argues that construction is not necessary but in the event the Court decides construction is necessary the proper construction of "another location of memory" memory is "volatile memory that can be written to as well as read".  "Another

memory location" refers to a different location that has memory such as in claims 5 of the '304 patent, which recites storing information on said recording media at another memory location.  The information could be stored at any device that has volatile memory, such as a computer hard drive or any other device with RAM both of which have volatile memory that can be written to as well as read.  There is no requirement that it be a data recording medium such as a CD or DVD as argued by Perceptive.  Furthermore a data recording medium is functionally different than memory.

### 17.   Disputed Term: "Another storage location"

| Claim Term | Relevant Claims (independent in bold) | Sorna Proposed Construction | Perceptive Proposed Construction |
|---|---|---|---|
| another storage location | '408 Patent: No reference<br><br>'214 Patent: No reference<br><br>'304 Patent: **19,** 20,**22,**23<br><br>'226 Patent: No reference | No construction necessary<br><br>Should the Court find construction necessary:<br><br>"another location of storage."  Storage is properly defined as "any device in which or on which information can be kept." There is no support for a construction that this refers to a different data recording medium. | "a different data-recording medium" |

Perceptive argues that this term must be construed as "a different data-recording medium".  Sorna argues that construction is not necessary but in the event the Court

33

deems it necessary to construe this term the proper construction is "another location of storage".  As with disputed term 16 there is no requirement that a different data-recording medium be used.  Rather another storage location can be any device in which or on which information can be kept.  "Another storage location" refers to a different location for storage such as in claims 19 of the '304 patent, which recites storing information "related to said DICOM image information from the one or more files recorded on said recording media at another storage location".  Again this could be a computer hard drive or any other device.  It is not limited to any particular data recording medium.

### III.   CONCLUSION

Sorna believes that the constructions laid out above are proper and urges favorable consideration by the Court.  The claim construction positions taken by Perceptive in the joint patent case status report have been refuted, and Sorna hopes to answer any questions the Court may have based on this briefing at the claim construction hearing.

Dated: February 12, 2015                     By: /s/ Frank S. Farrell

**F.S. FARRELL, LLC**
Frank S. Farrell (MN #28447)
Alexander J. Farrell (MN #390202)
7401 Metro Blvd, suite 425
Edina, MN  55439
Telephone: (952) 921-3260
frank@fsfarrell.com
alexander@fsfarrell.com


**ATTORNEYS FOR PLAINTIFF
SORNA**